# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION
### No. 4:14-cv-00186-D

| | | |
|---|---|---|
| SAUL HILLEL BENJAMIN,<br><br>    Plaintiff,<br><br> -against-<br><br>NICHOLAS SPARKS, in his official and individual capacities; THE EPIPHANY SCHOOL OF GLOBAL STUDIES; NICHOLAS SPARKS FOUNDATION; MISSY BLACKERBY, in her official and individual capacities; TRACY LORENTZEN, in her official and individual capacities; and KEN GRAY, in his official and individual capacities,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ANSWER OF NICHOLAS SPARKS TO PLAINTIFF'S AMENDED COMPLAINT** |

Defendant Nicholas Sparks ("Mr. Sparks"), in answer to Plaintiff's Amended Complaint (Dkt. #51), states the following:

## NATURE OF THE CLAIMS

The first eight (8) paragraphs of Plaintiff's Amended Complaint (the "Complaint") are nothing more than a summary of Plaintiff's allegations, consisting of innuendo, argument and matters irrelevant to his legal claims. These statements have no legal significance and require no response. However, to the extent a response is required, the allegations of Paragraphs 1 through 8 are denied in their entirety. Mr. Sparks denies any claim or allegation that he discriminated against any individual due to race, religion, sexual orientation or any other basis, nor has he condoned any other individual doing so. Mr. Sparks actively recruited and enthusiastically welcomed Plaintiff as Headmaster of Epiphany School of Global Studies with full knowledge of

Plaintiff's self-disclosed religion and heritage. Unfortunately, Plaintiff did not promote the diversity and inclusiveness Mr. Sparks desired, and which Plaintiff now claims to have fostered. Instead, he engaged in divisive and discriminatory behavior toward a number of members of the School community, and made repeated misrepresentations regarding his activities as Headmaster. Despite his dishonesty and numerous discriminatory acts, Plaintiff was given the opportunity to resign on lucrative and favorable terms rather than being terminated—an opportunity that he accepted. Plaintiff now attempts to use this lawsuit to rewrite the history of his employment at the Epiphany School of Global Studies and seeks to disavow his resignation and renegotiate the terms on which he resigned.

## JURISDICTION AND VENUE

9.     The allegations of Paragraphs 9 and 10 are legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

## PROCEDURAL REQUIREMENTS

10.     The allegations of Paragraphs 11 and 12 are denied.

## PARTIES

11.     In response to Paragraph 13, Mr. Sparks admits that Plaintiff is the former Headmaster of Epiphany School of Global Studies ("Epiphany" or the "School"), as well as a former consultant for the Nicholas Sparks Foundation (the "Foundation"). Mr. Sparks denies that Plaintiff was the School's CEO. Mr. Sparks lacks sufficient knowledge or information to either admit or deny Plaintiff's current residence, and this allegation is therefore denied. Except as expressly admitted, the allegations of Paragraph 13 are denied.

12.     The allegations of Paragraphs 14 and 15 are admitted.

2

13.     In response to Paragraph 16, Mr. Sparks admits that he and his then-wife, Catherine Sparks, founded the School on the "four pillars" of college preparation, global studies, open-hearted faith and low cost; that from its founding until September 2014 and from January 2016 to present, Mr. Sparks acted as Chair of the Board of Trustees ("Board"), and has at all relevant times herein been a member of the Board of Trustees.  Except as expressly admitted, the allegations of Paragraph 16 are denied.

14.     The allegations of Paragraphs 17 through 19 are admitted upon information and belief.

## FACTUAL ALLEGATIONS

15.     In response to Paragraphs 20 through 22, Mr. Sparks admits that Plaintiff signed the Employment Agreement and the Independent Contractor Agreement on or about February 20, 2013.  Mr. Sparks also admits that Plaintiff consulted on some issues prior to his contractual start date of July 2013, but further states that Plaintiff took several weeks of vacation between July and his resignation in November 2013.   Mr. Sparks admits that Plaintiff's allegations regarding his day-to-day job functions are a partial summary of his duties but states that Plaintiff's immediate priorities were also hiring a chaplain, improving academic performance, uniting the School's two campuses, improving faculty morale and fundraising.   Except as expressly admitted, the allegations of Paragraphs 20 through 22 are denied.

16.     In response to Paragraph 23, Mr. Sparks admits that Plaintiff's resume depicted a career at a variety of institutions in the United States and abroad which appeared sufficient for a headmaster position.   However, Mr. Sparks has since learned of numerous discrepancies in Plaintiff's employment background suggesting that his career is not entirely "distinguished," that Plaintiff misrepresented his credentials, and that Plaintiff had premature or involuntary

3

departures from prior places of employment. Except as expressly admitted, the allegations of Paragraph 23 are denied.

17.     In response to Paragraph 24, Mr. Sparks admits that diversity was an important goal among many other goals discussed between Plaintiff and the Board. Except as expressly admitted, the allegations of Paragraph 24 are denied.

18.     In response to Paragraphs 25 through 27, Mr. Sparks admits that Plaintiff suggested limited revisions to the School's existing non-discrimination policy, and that those revisions were adopted by the Board. Mr. Sparks is neither able to admit nor deny how Plaintiff prepared his recommended revision to the existing non-discrimination policy. Mr. Sparks further admits that Plaintiff proposed a new class he would teach to seniors and took the initial steps to meet with various constituencies to discuss selected aspects of the School. Except as expressly admitted, the allegations of Paragraphs 25 through 27 are denied.

19.     The allegations of Paragraphs 28 and 29 are denied.

20.     Mr. Sparks lacks sufficient knowledge or information to either admit or deny the statements alleged in Paragraph 30, and those allegations are therefore denied.

21.     In response to Paragraphs 31 through 34, Mr. Sparks states that one of his goals in founding the School was creating an environment with a diverse student body, faculty and staff. However, Mr. Sparks does not define diversity solely by the number of students or staff who are African-American or any other race. African-American, Asian and Hispanic students have been and are currently enrolled at Epiphany. Mr. Sparks denies Plaintiff's allegations regarding their conversation about Epiphany's admissions and can neither admit nor deny the substance of any conversations between Ms. Foley and Plaintiff. Mr. Sparks admits that Plaintiff assisted in recruiting and hiring an African-American faculty member, a decision Mr. Sparks fully

4

supported and for which Mr. Sparks provided additional personal funding. Mr. Sparks is unaware of any discriminatory practices by the School toward this or any other member of the faculty or staff, and would not have condoned such practices. Mr. Sparks is unaware of any specific effort by Plaintiff to address the discrimination he alleges, but to the contrary, Mr. Sparks received complaints from faculty members who felt they were discriminated against by Plaintiff. Except as expressly admitted, the allegations of Paragraphs 31 through 34 are denied.

22. In response to Paragraphs 35 and 36, Mr. Sparks admits that he and other Board members supported Plaintiff's organization of the trip to Washington, D.C. to celebrate the 50th anniversary of Dr. Martin Luther King, Jr.'s "I have a dream" speech. No parent expressed to Mr. Sparks that the trip to Washington, D.C. trip was a "political demonstration." Mr. Sparks is aware that some parents elected not to send their children on the trip for reasons personal to those families. Consistent with his ongoing efforts to support Epiphany's diversity goals, Mr. Sparks advised Plaintiff that Plaintiff's use of stereotypes in labeling parents, students and teachers as "racists" or "bigots" was harmful to both Plaintiff's and the School's diversity efforts. Except as expressly admitted, the allegations of Paragraph 35 and 36 are denied.

23. In response to Paragraph 37, Mr. Sparks denies that he ever displayed contempt for Plaintiff's ethnicity, and is unaware of any other Board member doing so. Mr. Sparks lacks sufficient knowledge or information to either admit or deny the remaining allegations of Paragraph 37, and they are therefore denied. Except as expressly admitted, the allegations of Paragraph 37 are denied.

24. In response to Paragraphs 38 through 41, Mr. Sparks states that he learned that there had been reports to School administration that a small group of students were alleged to have used the word "homocaust" in a classroom. Mr. Sparks was notified of these allegations

after Plaintiff had already conducted an investigation and determined that no students would be disciplined. Mr. Sparks was notified about the incident in part due to complaints about the manner in which Plaintiff conducted the investigation, including threatening a student with rescinding the student's already submitted college recommendation if the student did not join the School's LGBT club. Mr. Sparks also discovered that Plaintiff had misrepresented his involvement in forming the LGBT club. Plaintiff had denied his involvement, but was in fact instrumental in forming the club, which planned to meet in secret and without parental permission. Mr. Sparks informed Plaintiff on behalf of the Board that the School could not support this type of club without counseling resources to support the students, and that there should be full transparency with the Board by the Plaintiff in undertaking such efforts. Contrary to his allegations, Plaintiff agreed that it was not "appropriate" or "timely" for there to be any formally sanctioned LGBT club at the School. At the same time, Mr. Sparks communicated extensively to Plaintiff regarding the need to support students with questions related to sexuality, and Mr. Sparks suggested additional language regarding inclusion for Plaintiff's consideration in a School policy. The final sentence of Paragraph 41 relates to issues wholly outside this lawsuit, is a mischaracterization of Mr. Sparks' comments and is denied. Except as expressly admitted, the allegations of Paragraphs 38 through 41 are denied.

25.     Mr. Sparks can neither admit nor deny the allegations of Paragraph 42, and they are therefore denied.

26.     In response to Paragraphs 43 through 49, Mr. Sparks admits that at Plaintiff's request, he had a breakfast meeting with Plaintiff and Plaintiff's wife, Jenna Dueck, on October 29, 2013. Mr. Sparks admits that they discussed a number of topics, including frustrations that had been expressed to Mr. Sparks related to Plaintiff's attendance at New Bern's "Mumfest."

The event involved a number of community organizations, including the School and the Foundation.  Among several other topics related to Plaintiff's attendance at Mumfest, Mr. Sparks informed Plaintiff that parents had complained about Plaintiff skipping a performance of Epiphany students at the same venue as the NAACP event, that parents believed he had been rude to the parents and students he did see, and that Plaintiff had not followed through on his promise to devote substantial amounts of time to working in the Foundation booth.  Mr. Sparks also reminded Plaintiff that Plaintiff needed to focus on his fundraising efforts in order to develop the scholarship funds.  Mr. Sparks denies any comment or belief that Plaintiff's actions in socializing with African-Americans brought disrepute to Epiphany.  Mr. Sparks admits that during the breakfast meeting, he reiterated to Plaintiff the expectation, which had been previously communicated to Plaintiff before he accepted the position of headmaster, that Epiphany would hire a Christian chaplain, and that Plaintiff himself had committed in writing to hiring "someone deeply anchored in their Christian faith."  Later, Plaintiff thanked Mr. Sparks for the breakfast meeting with Plaintiff and his wife.  Except as expressly admitted, the allegations of Paragraphs 43 through 49 are denied.

27.     In response to Paragraphs 50 and 51, Mr. Sparks admits that during the regularly scheduled October 30, 2013 Board meeting, the Board discussed with Plaintiff his performance to date as headmaster and helped Plaintiff identify opportunities to repair some of the relationships he had damaged in his first weeks at the School.  Topics included his interactions with faculty, staff and families and a growing perception that Plaintiff discriminated and retaliated against individuals who did not share his beliefs.  Mr. Sparks admits that Mr. Gray raised the issue of whether Plaintiff could be in breach of his contract, but as a courtesy to Plaintiff, no formal action was taken regarding his employment or his contract.  Plaintiff

expressed appreciation to the entire Board for the conversation following the meeting. Except as expressly admitted, the allegations of Paragraphs 50 and 51 are denied.

28.    In response to Paragraph 52, Mr. Sparks lacks sufficient knowledge or information to either admit or deny the allegations and they are accordingly denied.

29.    In response to Paragraph 53, Mr. Sparks admits that he expressed to Plaintiff that some people would not trust him because of his divisive behavior in the community, including ignoring the input of the chaplain search committee. Mr. Sparks lacks sufficient knowledge or information to either admit or deny the allegations of the second sentence of Paragraph 53 and they are accordingly denied.

30.    In response to Paragraphs 54 through 59, Mr. Sparks was not present for the November 16, 2013 discussion described therein, and therefore lacks sufficient information to admit or deny the allegations of Paragraphs 54 through 59, which are accordingly denied.

31.    In response to the allegations of Paragraph 60, Mr. Sparks reincorporates his responses to Paragraphs 25 through 27, and states that upon further review after the policy was modified, Mr. Sparks noted to Plaintiff that the revised policy was broader than required by law. Mr. Sparks nonetheless emphasized that the School does not discriminate against gay students and he expected Plaintiff to continue to support gay students. Except as expressly admitted, the allegations of Paragraph 60 are denied.

32.    In response to Paragraphs 61 through 68, Mr. Sparks states that the November 19, 2013 meeting was the already scheduled annual Board forum, a meeting held each year to allow the Board to communicate directly with parents and the School community. A number of School matters are discussed at the forum each year, and the November 2013 forum included discussion of, among many others topics, parking, hiring the chaplain, and exposing students to Ivy League

8

schools. The forum was not scheduled or convened in response to any statement or action of Plaintiff, nor was Plaintiff misled in any manner about the nature of the event. Plaintiff had prepared his own written comments on his faith, which he suggested Mr. Sparks read to the audience. After Mr. Sparks suggested Plaintiff's comments would be more effective if delivered personally by Plaintiff, Plaintiff elected to deliver them himself. When Plaintiff addressed the attendees, he stated that he had asked to address them, and apologized for any confusion he had caused. Plaintiff discussed his religious views as a Quaker, but did not discuss his Jewish heritage or ethnicity. During the question and answer session, a regular feature of the annual forum, a number of issues were addressed that did not relate to Plaintiff. There were both positive and negative comments from the audience about Plaintiff, none of which mentioned his religion or ethnicity. Mr. Sparks admits that Board members applauded comments that were both positive and negative, including comments critical of the Board members themselves. Except as expressly admitted, the allegations of Paragraphs 61 through 68 are denied.

33. In response to Paragraphs 69 through 78, Mr. Sparks states that he asked Plaintiff to meet with Mr. Gray, Ms. Lorentzen and Mr. Sparks on November 21, 2013 to give Plaintiff an opportunity to resign before the Board met again to discuss his employment. As chair of the Board, Mr. Sparks had received multiple grievances from parents, faculty and staff, which indicated there would be multiple reasons for the Board to consider terminating Plaintiff for cause. When Plaintiff was asked about his conduct and misrepresentations, he denied them, even when confronted with evidence. Nonetheless, Plaintiff was given the opportunity to resign in exchange for a severance package, including characterizing the remainder of the academic year as a sabbatical, and receiving generous compensation and a housing allowance. Plaintiff was informed that the severance offer would not remain open for acceptance after the meeting. When

9

Lorentzen suggested that Plaintiff's wife, Ms. Dueck, come to the meeting, Mr. Gray and Mr. Sparks left the meeting, allowing Ms. Dueck and Plaintiff to discuss the severance terms with Ms. Lorentzen. When Mr. Gray and Mr. Sparks returned, Plaintiff prepared and signed his own letter of resignation and the meeting concluded. Plaintiff was told during the meeting that his contract with the Foundation was also being terminated, for cause. The meeting was held in the School's conference room, which has one small window, and Mr. Sparks is unaware of anyone who witnessed these events through the window, or who otherwise learned of the meeting without being involved in the meeting. At no time was Plaintiff physically intimidated, threatened or assaulted. Except as expressly admitted, the allegations of Paragraphs 69 through 78 are denied.

34.     In response to Paragraphs 79 and 80, Mr. Sparks admits that in the days immediately following Plaintiff's resignation, he communicated with Ms. Dueck, who was at that time and until August 2014 employed by the Nicholas Sparks Foundation. These communications were at Ms. Dueck's request and in part related to her continued work responsibilities. Mr. Sparks admits that Ms. Dueck volunteered to him her concerns regarding Plaintiff's health and expressed her appreciation for Mr. Sparks's generosity, and Mr. Sparks shared his concern regarding Plaintiff. Except as expressly admitted, the allegations of Paragraphs 79 and 80 are denied.

35.     In response to Paragraph 81, Mr. Sparks can neither admit nor deny whether Plaintiff had any disability or whether he had any physical or mental impairment interfering with his performance, and this allegation is therefore denied. Mr. Sparks denies defaming Plaintiff regarding any such condition, and further denies that he caused Plaintiff any reputational damage. Except as expressly admitted, the allegations of Paragraph 81 are denied.

36.     In response to Paragraphs 82 through 84, the contents of the website are the best evidence of their contents and no further response is required. To the extent any further response is required, the allegations are denied.

37.     In response to Paragraphs 85 and 86, the content of the School's job postings speak for themselves and no further response is required. To the extent any further response is required, the allegations are denied.

38.     The allegations of Paragraphs 87 through 90 are denied.

39.     In response to the allegations of Paragraph 91, Mr. Sparks lacks sufficient knowledge or information to either admit or deny Plaintiff's purported job opportunities or the substance of his conversations with Mr. Plihcik, and those allegations are accordingly denied. Mr. Sparks admits that he notified Mr. Plihcik regarding the status of Plaintiff's employment as part of the effort to begin recruitment of a new headmaster. Except as expressly admitted, the allegations of Paragraph 91 are denied.

40.     In response to Paragraphs 92 and 93, Mr. Sparks states that he is aware that instructions were given to School faculty, that those instructions are the best evidence of their content, and that no further response is required. To the extent any further response is required, the allegations are denied.

41.     Mr. Sparks lacks any knowledge or information regarding the allegations of Paragraph 94, and they are accordingly denied.

42.     Mr. Sparks admits that Paragraphs 95 through 97 purport to summarize certain portions of the Employment Agreement, and the Employment Agreement is the best evidence of its contents. To the extent a further response is required, the allegations are denied.

43. Mr. Sparks admits that Paragraph 98 purports to summarize certain portions of the Employment Agreement, and that the Employment Agreement is the best evidence of its contents. Mr. Sparks lacks sufficient knowledge or information to admit or deny whether Plaintiff committed a crime or fraud, but Mr. Sparks believes Plaintiff was repeatedly dishonest before and during his employment, both verbally and in writing, in violation of the Agreement. Except as expressly admitted, the allegations of Paragraph 98 are denied.

44. Mr. Sparks admits that Paragraph 99 purports to summarize certain portions of the Employment Agreement, and the Employment Agreement is the best evidence of its contents. Mr. Sparks believes Plaintiff engaged in conduct resulting in damage to the reputation and operation of the School. Except as expressly admitted, the allegations of Paragraph 99 are denied.

45. Mr. Sparks admits that Paragraph 100 purports to summarize certain portions of the Employment Agreement, and that the Employment Agreement is the best evidence of its contents. Mr. Sparks is currently unaware of Plaintiff misappropriating funds or being addicted to drugs or alcohol or being accused of being addicted to drugs or alcohol. Except as expressly admitted, the allegations of Paragraph 100 are denied.

46. Mr. Sparks admits that Paragraph 101 purports to summarize certain portions of the Employment Agreement, and that the Employment Agreement is the best evidence of its contents. Mr. Sparks can neither admit nor deny what Plaintiff believed about his own performance, and except as expressly admitted, the allegations of Paragraph 101 are denied.

47. Mr. Sparks admits that Paragraph 102 purports to summarize certain portions of the Employment Agreement, and that the Employment Agreement is the best evidence of its

contents.  Mr. Sparks admits that Plaintiff did not follow all specific lawful instructions of the Board.  Except as expressly admitted, the allegations of Paragraph 102 are denied.

48.     In response to Paragraph 103, Mr. Sparks lacks sufficient knowledge or information to either admit or deny Plaintiff's physical or mental condition and the allegations of Paragraph 103 are accordingly denied.

49.     Mr. Sparks admits that Paragraphs 104 and 105 purport to summarize certain portions of the Employment Agreement, and that the Employment Agreement is the best evidence of its contents.  Except as admitted, the allegations of Paragraphs 104 and 105 are denied.

50.     The allegations of Paragraphs 106 through 109 are denied.

51.     The allegations of Paragraph 110 are legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

52.     The allegations of Paragraph 111 are denied.

53.     Mr. Sparks admits that Paragraphs 112 through 115 purport to summarize portions of the Independent Contractor Agreement, and that the Independent Contractor Agreement is the best evidence of its contents.  Except as admitted, the allegations of Paragraphs 112 through 115 are denied.

54.     In response to Paragraphs 116 through 118, Mr. Sparks states that Plaintiff was terminated from the Foundation at the same time he resigned from the School.  At Plaintiff's request, the Foundation allowed Plaintiff to characterize the termination as a resignation and sent him a letter to that effect.  Except as expressly admitted, the allegations of Paragraphs 116 through 118 are denied.

## FIRST CAUSE OF ACTION
### (Discrimination and Harassment in Violation of Section 1981)
### (As to All Defendants)

55.    In response to Paragraph 119, Mr. Sparks incorporates his responses to Paragraphs 1 through 118 as if fully set forth herein.

56.    The allegations of Paragraphs 120 through 123 are denied.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Section 1981)
### (As to All Defendants)

57.    In response to Paragraph 124, Mr. Sparks incorporates his responses to the foregoing Paragraphs 1 through 123 as if fully set forth herein.

58.    The allegations of Paragraphs 125 through 128 are denied.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of Title VII on the Basis of Religion)
### (As to Defendant Epiphany)

59.    In response to Paragraph 129, Mr. Sparks incorporates his responses to Paragraphs 1 through 128 as if fully set forth herein.

60.    The allegations of Paragraphs 130 through 133 are not pled against Mr. Sparks and accordingly, no response is required.  To the extent a response is required, the allegations are denied.

## FOURTH CAUSE OF ACTION
### (Discrimination in Violation of Title VII on the Basis of Race)
### (As to Defendant Epiphany)

97.    In response to Paragraph 134, Mr. Sparks incorporates his responses to Paragraphs 1 through 133 as if fully set forth herein.

98.     The allegations of Paragraphs 135 through 138 are not pled against Mr. Sparks and accordingly, no response is required.  To the extent a response is required, the allegations are denied.

### FIFTH CAUSE OF ACTION
**(Discrimination in Violation of Title VII on the Basis of National Origin)**
**(As to Defendant Epiphany)**

102.     In response to Paragraph 139, Mr. Sparks incorporates his responses to Paragraphs 1 through 138 as if fully set forth herein.

103.     Plaintiff's claim for discrimination on the basis of national origin has been dismissed by the Court's March 23, 2016 Order.  (Dkt. #65.)  Accordingly, no response is required to Paragraphs 140 through 143.

### SIXTH CAUSE OF ACTION
**(Discrimination in Violation of the ADA)**
**(As to Defendant Epiphany)**

105.     In response to Paragraph 144, Mr. Sparks incorporates his responses to Paragraphs 1 through 143 as if fully set forth herein.

106.     The allegations of Paragraphs 145 through 148 are not pled against Mr. Sparks and accordingly, no response is required.  To the extent a response is required, the allegations are denied.

### SEVENTH CAUSE OF ACTION
**(Retaliation in Violation of Title VII)**
**(As to Defendant Epiphany)**

112.     In response to Paragraph 149, Mr. Sparks incorporates his responses to Paragraphs 1 through 148 as if fully set forth herein.

113.     The allegations of Paragraphs 150 through 153 are not pled against Mr. Sparks and accordingly, no response is required.  To the extent a response is required, the allegations are denied.

## EIGHTH CAUSE OF ACTION
### (Breach of Contract)
### (As to Defendant Epiphany)

117.   In response to Paragraph 154, Mr. Sparks incorporates his responses to Paragraphs 1 through 153 as if fully set forth herein.

118.   The allegations of Paragraphs 155 through 158 are not pled against Mr. Sparks and accordingly, no response is required.  To the extent a response is required, the allegations are denied.

## NINTH CAUSE OF ACTION
### (Breach of Contract)
### (As to Defendant the Foundation)

119.   In response to Paragraph 159, Mr. Sparks incorporates his responses to Paragraphs 1 through 158 as if fully set forth herein.

120.   The allegations of Paragraphs 160 through 163 are not pled against Mr. Sparks and accordingly, no response is required.  To the extent a response is required, the allegations are denied.

## TENTH CAUSE OF ACTION
### (Defamation *Per Se*)
### (As to Defendant Sparks)

127.   In response to Paragraph 164, Mr. Sparks incorporates his responses to Paragraphs 1 through 163 as if fully set forth herein.

128.   The allegations of Paragraphs 165 through 170 are denied.

## ELEVENTH CAUSE OF ACTION (ALTERNATIVE TO THE TENTH)
### (Defamation)
### (As to Defendant Sparks)

130.   In response to Paragraph 171, Mr. Sparks incorporates his responses to Paragraphs 1 through 170 as if fully set forth herein.

131.   The allegations of Paragraphs 172 through 180 are denied.

## TWELFTH CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Relations)
### (As to Defendant Sparks)

140.    In response to Paragraph 181, Mr. Sparks incorporates his responses to Paragraphs 1 through 180 as if fully set forth herein.

141.    Plaintiff's claim for tortious interference with contract has been dismissed by the Court's March 23, 2016 Order. (Dkt. #65.) Accordingly, no response is required to Paragraphs 182 through 186.

## THIRTEENTH CAUSE OF ACTION
### (Tortious Interference with a Contract)
### (As to Defendants Epiphany and Sparks)

150.    In response to Paragraph 187, Mr. Sparks incorporates his responses to Paragraphs 1 through 186 as if fully set forth herein.

151.    Plaintiff's claim for tortious interference with contract has been dismissed by the Court's March 23, 2016 Order. (Dkt. #65.) Accordingly, no response is required to Paragraphs 188 through 191.

## FOURTEENTH CAUSE OF ACTION
### (False Imprisonment)
### (As to Defendants Sparks, Gray, and Lorentzen)

155.    In response to Paragraph 192, Mr. Sparks incorporates his responses to Paragraphs 1 through 191 as if fully set forth herein.

156.    The allegations of Paragraphs 193 through 195 are denied.

## FIFTEENTH CAUSE OF ACTION
### (Assault)
### (As to Defendant Sparks)

157.    In response to Paragraph 196, Mr. Sparks incorporates his responses to Paragraphs 1 through 195 as if fully set forth herein.

160.    The allegations of Paragraphs 197 through 199 are denied.

## SIXTEENTH CAUSE OF ACTION
### (Retaliation in Violation of School Violence Prevention Act)
### (As to all Defendants)

161.    In response to Paragraph 200, Mr. Sparks incorporates his responses to Paragraphs 1 through 199 as if fully set forth herein.

162.    Plaintiff's claim for retaliation in violation of the School Violence Protection Act was dismissed by the Court's March 23, 2016 Order. (Dkt. # 65.) Accordingly, no response is required to Paragraphs 201 through 204.

The remainder of the Complaint is a prayer for relief to which no response is required. To the extent a response is required, Mr. Sparks states that Plaintiff is entitled to none of the relief he demands.

Except as expressly admitted herein, each and every allegation of the Amended Complaint is denied.

## DEFENSES

In further response to Plaintiff's Amended Complaint, Mr. Sparks asserts the following defenses:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's claims may be barred, in whole or in part, by applicable limitations periods or administrative deadlines imposed by federal law.

### THIRD DEFENSE

Plaintiff's claims may be barred, in whole or in part, for failure to exhaust administrative remedies.

18

## FOURTH DEFENSE

Plaintiff has failed to mitigate his damages.

## FIFTH DEFENSE

Any interactions Mr. Sparks had with Plaintiff during the times relevant to this lawsuit were consistent with the law and occurred as a legitimate exercise of business judgment.

## SIXTH DEFENSE

Mr. Sparks at all times relevant to this lawsuit acted in good faith, in a lawful manner and without malice toward Plaintiff.

## SEVENTH DEFENSE

Plaintiff failed to avail himself of internal remedies and/or seek redress through all available avenues.

## EIGHTH DEFENSE

Plaintiff's claims are barred in whole, or in part, by the equitable doctrines of waiver, unclean hands, laches and estoppel.

## NINTH DEFENSE

Plaintiff's claims are barred by his contributory negligence.

## TENTH DEFENSE

Mr. Sparks' statements, to the extent made, were matters of opinion that he believed to be true.

Mr. Sparks reserves the right to supplement his defenses with any additional defenses that may be revealed through discovery or otherwise.

This the 6th day of April, 2016.

**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Limited Liability Partnership*

/s/ Hayden J. Silver III
Hayden J. Silver III (N.C. Bar No. 10037)
Theresa M. Sprain (N.C. Bar No. 24540)
Marina C. Carreker (N.C. Bar No. 38086)
555 Fayetteville Street, Suite 1100
PO Box 831
Raleigh, North Carolina 27601
Telephone: (919) 755-2188
Facsimile: (919) 755-6099
E-mail: jsilver@wcsr.com

*Attorneys for Defendants Nicholas Sparks and Nicholas Sparks Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **ANSWER OF NICHOLAS SPARKS TO PLAINTIFF'S AMENDED COMPLAINT** was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice of case activity to be generated and sent electronically by the Clerk of Court to the following parties registered to receive such service:

Douglas H. Wigdor
Lawrence M. Pearson
Christopher R. Lepore
Wigdor LLP
85 Fifth Avenue
New York, NY 10003

John S. Arrowood
Kristen E. Finlon
James, McElroy & Diehl, P.A.
600 S. College Street
Charlotte, NC 10118

Richard L. Pinto
Deborah J. Bowers
Pinto Coates Kyre & Bowers, PLLC
3203 Brassfield Road
Greensboro, NC 27410

This the 6th day of April, 2016.

**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Limited Liability Partnership*

/s/ Hayden J. Silver III
Hayden J. Silver III (N.C. Bar No. 10037)
Theresa M. Sprain (N.C. Bar No. 24540)
Marina C. Carreker (N.C. Bar No. 38086)
555 Fayetteville Street, Suite 1100
PO Box 831
Raleigh, North Carolina 27601
Telephone: (919) 755-2188
Facsimile: (919) 755-6099
E-mail: jsilver@wcsr.com

*Attorneys for Defendants Nicholas Sparks and Nicholas Sparks Foundation*